## DANIEL BRUCE *vs.* ELIZA G. BONNEY.

A discharge of a mortgage, entered by mistake in the margin of the record thereof in the registry of deeds, may be set aside in equity.

A bill in equity, which alleges that the plaintiff agreed with a mortgagee to purchase his mortgage, that by mistake a discharge was signed by the mortgagee on the margin of the record in the registry, and that the plaintiff, upon discovering the mistake, procured an assignment of the mortgage from the mortgagee, is supported by proof that the plaintiff purchased the mortgage at the mortgagor's request, that the mortgagee intentionally discharged the mortgage, but that the plaintiff, on the note and mortgage being brought to him with the expectation of receiving the money, declined to take them, saying that he only intended to purchase the mortgage, and that the assignment was consequently made. And the plaintiff is entitled on such proof, and under a prayer for general relief, to have the mortgage established, and the defendant restrained from setting up the discharge.

BILL IN EQUITY, filed on the 12th of October 1857, alleging that in 1827 David Bruce made a mortgage of real estate in Marblehead to William Ashby and David Merritt, to secure the payment in one year of a promissory note for $198; that Ashby and Merritt transferred the note and mortgage without assignment to one Micklefield; that Micklefield afterwards entered into a negotiation with Richard J. Crocker to take the note and mortgage, and proposed to Ashby and Merritt, who stood as mortgagees on the record, to make the assignment directly to Crocker, and they applied to Ralph H. French, the register of deeds, to effect such transfer; but through some misunderstanding, without their default, the register wrote on the margin of the record of the mortgage deed a discharge in the usual form, which was signed by one of the mortgagees, whereas it was Crocker's intention to purchase and not to pay the mortgage; that as soon as the mistake was discovered, in 1834, Crocker procured from Merritt, acting for himself and Ashby, an assignment under seal, reciting the error, and attested by French, the register, and acknowledged before him as justice of the peace, and that the register, upon discovery of the error, effaced the discharge. The bill then set forth various mesne assignments from Crocker to the plaintiff, and an entry for condition broken in 1852; and alleged that David Bruce died in 1828, that the defendant was one of his daughters and coheirs, and

claimed to hold her share of the mortgaged estate on the ground that the mortgage was discharged and terminated, and the subsequent assignments void, and had commenced a suit at law for partition. The bill prayed for a release of the defendant's interest in the estate, for an injunction of the suit at law and for further relief. Hearing before the chief justice, who made the following report thereof for the consideration and determination of the whole court.

" It was admitted that the mortgage and note, and the several assignments relied upon, were duly executed.

" The book of records from the registry of deeds was produced and exhibited, by which it appears that, in the margin of the record of this mortgage, an entry, apparently about the length of a discharge of a mortgage, had been made and erased. It was admitted that Micklefield is dead, and it is matter of notoriety that Mr. French, the former register of deeds, is dead.

" The defendant offered no evidence. The plaintiff offered the testimony of Crocker. The counsel for the defendant objected to the admission of any parol evidence, tending to prove that a record of a discharge of a mortgage may, as matter of law, be set aside or vacated, such record having by force of law, (Rev. Sts. *c.* 59, § 33,) the same effect as a deed of release, duly acknowledged and recorded. But I was of opinion and held, that in a hearing in equity, on a bill seeking relief in equity against such a record alleged to have been made by accident or mistake, the evidence is admissible.

" Instead of stating the testimony of Crocker as given, I propose to state the facts as they appear to me to have been proved by that testimony and the other evidence, and the inferences of fact to be properly made from them. They are these : The mortgaged premises consisted of part of a dwelling-house, with a right in common to the land, in Marblehead. The mortgage was duly made and executed in 1827, in which the wife joined ; the mortgagor died the year following, and the widow continued to occupy the dwelling-house. Afterwards Merritt and Ashby handed over the note and mortgage to Micklefield, to be collected for his own benefit, but without a formal assignment. In

1832 or 1833 Micklefield gave notice to the widow that the mortgage must be paid, otherwise the house must be sold, which notice was communicated by her to Crocker, who had married her daughter. Thereupon Crocker consented to pay or advance the sum due on the mortgage, and take it to himself, meaning and intending to accommodate her so far as to hold the mortgage subject to her convenience in the continued enjoyment of the house, and in the belief that at her decease, or whenever the estate could be applied to the satisfaction of the incumbrance, he should be reimbursed from its avails. Notice of some sort was given by Crocker to the widow to the foregoing effect, and by him to Micklefield, she having referred Micklefield to Crocker to receive his money to the amount due. Micklefield applied to Merritt and Ashby, and they, one or both, applied to French at the registry of deeds, and represented to him that they desired to discharge the mortgage, which was done on the margin of the record, in usual form ; and a certificate of that fact, together with the original note and mortgage, was handed to Micklefield, and by him carried to Boston, to be delivered to Crocker, with the expectation of receiving the money. This was the first communication which either of the parties had with Crocker on the subject. Crocker then informed him that he had no intention of paying and discharging the mortgage; that his only purpose, as expressed to the widow, was to take it to his own account, and he declined accepting the release altogether ; whereupon Micklefield took it back to have it altered and put right ; he then applied again to Merritt and Ashby, who went to the registry of deeds, and, under the direction of French, a regular assignment from Merritt and Ashby was prepared, reciting the former error and their intention to make an assignment. This assignment was executed by Merritt alone, who acknowledged it as the joint act and deed of both. This assignment, together with the mortgage and note, was again handed to Micklefield, and in a few days after the former was again presented to Crocker, and he paid Micklefield the money, about the sum, of $147. No assent was ever given to the transaction as at first made by Crocker,

and no money was paid by him, until the assignment had been regularly made by Merritt, for Merritt and Ashby, directly to himself, and such assignment with the note and mortgage delivered to him by Micklefield. Such is the state of the case on the evidence.

" Upon the first production of this proof I was inclined to think that the proof did not support the case as stated in the bill. It is stated that Crocker purchased of Micklefield the mortgage and note, and to make the title stand right upon the record, it was arranged that Merritt and Ashby should assign to him; that they applied to the register for that purpose, and, through misunderstanding, the register prepared a discharge, which was executed, and that Crocker set about having this error corrected, &c. By the proof, it appears that Crocker did nothing until after the discharge had been made on the margin of the record, and afterwards erased, as erroneous, and an assignment executed, upon delivery of which to him he first consented to pay, and did pay the money to Micklefield.

" But upon consideration it appeared to me that the substance of the case was, that the register, through some misunderstanding in the communication of Merritt and Ashby to him, prepared and superintended a discharge of the mortgage, when the sole purpose of the only party, expected to pay the then holder of the mortgage its amount, was to pay it as a purchaser and assignee, and not to cancel it. Now whether this mistake originated in the communication of the widow to Micklefield, of Micklefield to Merritt and Ashby, or of them to the register, still it was by reason of this misunderstanding of the true purpose that the mistake was made. The intention of Micklefield, the beneficial holder, and of Merritt and Ashby, the apparent mortgagees, was to execute either a discharge or an assignment, as Crocker, who was to pay the money, should prefer. I was therefore of opinion that the proof substantially sustained the case stated in the bill.

" The first question raised in the present case is, whether the assignment executed by Merritt alone, and acknowledged as the deed of Merritt and Ashby, was valid to transfer the mortgage

The note was made payable to William Ashby and David Merritt or order, and attested. The note was the principal, and the mortgage given as security was collateral. I think that one of the promisees of a promissory note payable to two jointly, having possession of the note, may receive payment and cancel it, or may indorse it. Hence it was indorsed to Crocker, and the indorsement signed ' Merritt & Ashby, by D. Merritt.' As it appears by the case that Merritt and Ashby had transferred the note for value previously to Micklefield, and that this indorsement was made at the request of Micklefield to make a legal title to that which had been before equitably transferred, the indorsement of one for both, with the actual delivery of the note, made a valid title to the indorsee. As the mortgage was merely collateral to the note and would in effect be discharged by its payment, I think the execution by one in the name of both was valid, and effected a good legal assignment.

" The next question arises upon the defendant's objection, that the evidence does not warrant the court, as a court of equity, in setting aside and vacating a record, formally made, of the discharge of a mortgage in due form of law. Upon this point it is proper to remark, that though to some purposes the registration of a deed is called and regarded as a record, yet it is not a judicial record, or like the case of a judgment between party and party. The deed recorded is but the transcript of the deed executed, deriving its force from the will and act of the party executing it. And *a fortiori*, the discharge of a mortgage on the margin of the record of the mortgage deed, which is strictly an act *in pais*, of which the register is the witness, and is declared by the statute to have the force and effect of a release duly acknowledged and recorded. But a release acknowledged and recorded would not be conclusive, even if delivered, if no money was paid, and other facts proved showing that it was delivered by accident or mistake. I am of opinion it is such a case of accident and mistake in the course of conveyancing, as would be relieved against in a court of equity upon satisfactory proof of such mistake or accident.

" Another question is, whether the plaintiff is entitled **to**

the relief prayed for, or to any other effectual relief, under this bill. The bill, after praying for a full and perfect answer, (which, however, is useless and unnecessary where an answer on oath is waived,) prays that the defendant may be commanded to release to the plaintiff all interest in said estate, and required to abstain from the further prosecution of her said proceedings at law, and for such other and further relief in equity, &c. It appears to me that staying the proceedings at law, (though I understand that a temporary injunction to that effect has heretofore been granted in this case,) till a hearing hereon, as an ultimate measure of relief, would be of little avail, and I am not aware on what grounds the defendant can be required to release any portion of her interest to the plaintiff.

" But under the prayer for general relief, the plaintiff is entitled, upon the case stated and proved, to a decree adapted to his case. Such decree will be substantially, after reciting the facts sufficiently to identify the case, to declare that the words of discharge on the margin of the record were so made by accident and mistake, that it did not prove an actual payment of the debt, or cancel or discharge the mortgage, but left the same in the same force and effect as before, and adjudging and declaring the same inoperative and void, and prohibiting and enjoining the defendant and all persons claiming by, through or under her, from setting up, using or relying on the said supposed discharge, as proof of payment of the note or discharge of the mortgage."

*S. H. Phillips*, for the plaintiff, cited *St.* 1856, *c.* 38 ; 1 Story on Eq. §§ 152–169 ; 4 Cruise Dig. (Greenl. ed.) tit. 32, *c.* 20, § 63 ; *Tilton* v. *Tilton*, 9 N. H. 385 ; *Lyman* v. *United Ins. Co.* 17 Johns. 376 ; *Gillespie* v. *Moon*, 2 Johns. Ch. 597 ; *Hunt* v. *Rousmanier*, 8 Wheat. 211 ; *Townshend* v. *Stangroom*, 6 Ves. (Amer. ed.) 328, & note ; *Leach* v. *Leach*, 18 Pick. 73 ; *Babcock* v. *Smith*, 22 Pick. 69, 70 ; *Hiern* v. *Mill*, 13 Ves. Jr. 114, & note ; 1 Dan. Ch. Pract. 437 ; *Wilkin* v. *Wilkin*, 1 Johns. Ch. 111 ; *English* v. *Foxall*, 2 Pet. 612.

*J. H. Robinson*, for the defendant. 1. The effect of the discharge on the margin of the record was to release the mortgage

and to pass the estate therein as by deed of release, acknowledged and recorded. Rev. Sts. *c.* 59, §§ 1, 5, 33. *Higbee* v. *Rice,* 5 Mass. 344. To grant any relief in this case, the court must admit parol evidence that the discharge was made by mistake, and thus create an estate in land by parol evidence only, which is contrary to the statute of frauds. *Woollam* v. *Hearn,* 7 Ves. 211; and note thereto in 2 White & Tudor's Lead. Cas. in Eq. *Gould* v. *Newman,* 6 Mass. 239. 4 Kent Com. (6th ed.) 135.

2. The rules of evidence are the same in equity as in law; therefore courts of equity will not receive parol evidence to vary an instrument in writing, or to prove a contract not in the written instrument, or to do more than is therein stated and which the statute of frauds requires to be in writing. *Dwight* v. *Pomeroy,* 17 Mass. 303. *Elder* v. *Elder,* 3 Fairf. 80. *Osborn* v. *Phelps,* 19 Conn. 63. *Wallace* v. *Hearne,* 7 Ves. 211; and note in 2 White & Tudor's Lead. Cas. in Eq. 3 Greenl. Ev. § 361 & note.

3. The assignment subsequently recorded was void, because it was not duly executed, and because Ashby and Merrill had no interest in the estate as mortgagees at its date. *Warden* v. *Adams,* 15 Mass. 233. Reading of Judge Trowbridge, 8 Mass. 557. *Parsons* v. *Welles,* 17 Mass. 419. *Clark* v. *Jenkins,* 5 Pick. 280. *Den* v. *Dimon,* 5 Halst. 156.

4. The evidence offered, if admissible, does not support the bill; and on the contrary shows that no mistake was made, but that the parties intended to discharge the mortgage.

THE COURT decreed that the words of discharge of the mortgage were written upon the margin of the record book in the registry of deeds by accident and mistake, and did not prove an actual payment of the mortgage debt, or cancel or discharge the mortgage, but were inoperative and void, and left it in the same force and effect as before; and that the defendant and all persons claiming by, through or under her should be prohibited and enjoined from setting up, using or relying upon said words of discharge, either as proof of payment of the debt, or a discharge of the mortgage; with liberty to either party to apply to the court hereafter.